IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MARIO ALBERTO LOPEZ GARZA, )
THE EXECUTOR OF THE ESTATE OF )
HANS JORG SCHNEIDER SAUTER, )
)
    Plaintiff, )
)
v. ) Civ. No. 15-537-SLR
)
CITIGROUP INC., )
)
    Defendant. )
)

Thomas G. Macauley, Esquire of Macauley LLC, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Susan L. Burke, Esquire of Law Offices of Susan L. Burke.

Stephen P. Lamb, Esquire, and Meghan Dougherty, Esquire of Paul, Weiss, Rifkind, Wharton, and Garrison, L.L.P., Wilmington, Delaware. Counsel for Defendant. Of Counsel: Bruce Birenboim, Esquire, Elizabeth G. McCabe, Esquire, and Alexandra M. Walsh, Esquire of Paul, Weiss, Rifkind, Wharton, and Garrison, L.L.P.

**MEMORANDUM OPINION**

Dated: November 13, 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On June 25, 2015, plaintiff Mario Alberto Lopez Garza, the Executor of the Estate of Hans Jorg Schneider Sauter ("plaintiff" or "Estate") filed this action against Citigroup, Inc. ("Citigroup" or "defendant") seeking an accounting to determine whether defendant has information with respect to funds that may belong to the Estate. (D.I. 1) Presently before the court is Citigroup's motion for costs and a stay pursuant to Federal Rule of Civil Procedure 41(d). (D.I. 7) The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## II. BACKGROUND

### A. The Parties

Plaintiff Mario Alberto Lopez Garza resides in Jalisco, Mexico, and claims to serve as the Executor for the Estate of Hans Jorg Scneider Sauter. (D.I. 1 at ¶ 2) Hans Jorg Scneider Sauter was a citizen of Mexico and died on March 4, 2008. (*Id.* at ¶ 3) Citigroup is a global bank incorporated in the State of Delaware, with its principle place of business in New York, New York. (*Id.* at ¶ 4) Grupo Financiero Banamex, S.A. de C.V. ("Banamex") is a wholly owned, indirect subsidiary of Citigroup. (D.I. 11 at ¶ 5)

### B. Judicial Proceedings in Mexico

Plaintiff alleges that Mr. Schneider Sauter deposited approximately $340,000,000 in two Banamex accounts between August 2002 and June 2003. (D.I. 10, ex. 1 at ¶¶ 9, 12) Plaintiff claims to possess three Banamex documents that establish Banamex is holding substantial depository funds that belong to the Estate. (D.I. 1 at ¶ 11) Plaintiff

alleges that the first document purports to describe an internal banking investigation with respect to Mr. Schneider Sauter and his accounts, and suggests that any dispute will be fully resolved and any funds returned to Mr. Schneider Sauter's control once he "signs the resolution of the Cumulative Processing, which shows that the funds of the [account] are of licit origin and amount to the sum of 780,046,970 pesos."[1] (*Id.*) Plaintiff alleges that the other two documents, bearing the same signature, are titled "Bank Confirmation Letter (Applicable as Proof of Funds), Banamex S.A. De C.V.," and include a bank statement that confirms the amount of funds as reflected in the Cumulative Processing Report. (*Id.* at ¶ 12) Citigroup asserts that the documents are fraudulent. (D.I. 11 at ¶¶ 11-12)

With these documents, plaintiff initiated probate proceedings in Mexico in November 2012. (D.I. 10, ex. 1 at ¶ 25) Between March 4, 2013, and April 7, 2014, the Mexican probate judge issued thirteen orders directing Banamex to turn over the alleged funds to the Estate or "come forward with evidence sufficient to defeat the Estate's claim to the funds." (D.I. 1 at ¶ 13) In response, Banamex filed legal proceedings in Mexican civil courts asserting that the probate court lacks judicial power to order Banamex to turn over the alleged funds. (*Id.* at ¶ 14)

### C. The New York Litigation

In July 2014, while the Mexican proceedings were still ongoing, plaintiff commenced an action against Banamex, Banamex USA, and Citigroup in the United States District Court for the Southern District of New York ("New York litigation"),

---

[1] Plaintiff alleges that the document is dated February 2, 2010, and bears the signature of "Licenciado Ricardo Carvajal Estrada, National Counselor, Banco Nacional de Mexico, S.A." (D.I. 1 at ¶ 11)

2

alleging "(1) fraudulent conversion that justifies piercing the corporate veil; (2) a claim under the Alien Tort Claims Act; (3) a claim under the Expedited Funds Availability Act; and (4) a claim for enforcement of money judgments under New York law." *Estate of Sauter v. Citigroup Inc.*, Civ. No. 14-05812 LGS, 2015 WL 3429112, at *1 (S.D.N.Y. May 27, 2015). One month later, plaintiff filed an amended complaint, which added a new defendant (Grupo Financiero Banamex, S.A. de C.V.), new factual allegations, and a new cause of action asserted under the Racketeer Influenced and Corrupt Organization Act ("RICO"). *Id.*

Citigroup alleges that it requested that plaintiff withdraw the amended complaint because it was deficient and did not comply with the requirements of Federal Rule of Civil Procedure 11. (D.I. 8 at 4) Plaintiff declined to do so. (*Id.*) On October 29, 2014, the New York defendants timely responded to the amended complaint with a motion to dismiss.[2] *Estate of Sauter*, 2015 WL 3429112, at *2. Citigroup contends that, as a result of this motion, it expended over 800 hours of preparation, including researching various issues of Mexican and U.S. law, traveling to Mexico to conduct factual investigation, translating over 700 pages of Spanish-language documents, and preparing a motion to dismiss. (D.I. 8 at 4)

On November 10, 2014, plaintiff timely filed a motion seeking leave to file a proposed second amended complaint. *Estate of Sauter*, 2015 WL 3429112, at *2. The

---

[2] The motion included a supporting declaration from a criminal lawyer at Banamex that stated that Mexico's Office of the Attorney General had issued an order prohibiting Banamex from taking any action with respect to Mr. Schneider Sauter's accounts during the pendency of the Attorney General's ongoing investigation into the Estate, and a declaration provided by Banamex's attorney in Mexico City regarding ongoing litigation and administrative proceedings in Mexico, commenced before the action, concerning plaintiff's entitlement to the funds at issue. *Estate of Sauter*, 2015 WL 3429112, at *2

3

court, finding that the proposed second amended complaint was a complete rewrite[3] of the previous complaints and futile, denied plaintiff's motion for leave to amend on December 5, 2014. *Id.* at *2-3. At the hearing on December 5, 2014, the court asked if plaintiff's counsel would be willing to dismiss its action with prejudice. *Id.* Plaintiff's newly retained counsel stated, "[w]e would be inclined to agree that the RICO and [Alien Tort Statute] counts be dismissed with prejudice but that the other counts be permitted to proceed." *Id.* On December 12, 2014, plaintiff filed a notice of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).[4] *Id.* By letter dated December 16, 2014, Citigroup asked the court to vacate plaintiff's notice, dismiss the case with prejudice, and impose sanctions against plaintiff and its counsel. *Id.*

On May 27, 2015, the court ruled that the "extreme circumstances" necessary to vacate a voluntary dismissal were not present, and denied Citigroup's motion.[5] *Id.* at

---

[3] The court noted that the proposed second amended complaint dropped all three foreign defendants (leaving Citigroup as the only remaining defendant), and abandoned all four claims asserted in the amended complaint and instead replaced them with five new claims against Citigroup for (1) fraud; (2) breach of statutory banking duties; (3) negligence for violating purported duties Citigroup "owe[d] ... to its depositories"; (4) negligent hiring and supervision; and (5) accounting and the imposition of a constructive trust. *Estate of Sauter*, 2015 WL 3429112, at *2

[4] Under Federal Rule of Civil Procedure 41(a)(1)(A)(i), a plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment. Fed. R. Civ. P. 41. Thus, plaintiff was able to terminate the New York litigation without obtaining approval from the district court. This fact is significant, because a district court may require payment of litigation costs by the plaintiff as a condition to granting a dismissal under Rule 41(a)(2). *See Koch v. Hankins*, 8 F.3d 650 (9th Cir. 1993).

[5] The court rejected Citigroup's reliance on *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir. 1953), and found that "in cases falling short of the extreme exemplified by *Harvey Aluminum*, notices of dismissal filed in conformance with the explicit requirements of Rule 41(a)(1)(i) are not subject to vacatur on the ground that

4

*3-4. The court noted that although plaintiff's conduct "raised questions about whether [plaintiff and counsel] acted properly," their conduct did not rise to the level of bad faith and did not warrant sanctions. *Id.* at *4. The court stated, however, that the Federal Rules of Civil Procedure provide safeguards for a defendant such as Citigroup should plaintiff commence a second action, "including barring plaintiff from voluntarily dismissing the case without prejudice a second time and by permitting the court in the subsequent action to order plaintiff to pay all of defendant's costs and fees in this dismissed action." *Id.* at *5.

### D. The Current Complaint

On June 25, 2015, plaintiff filed the instant complaint, claiming that Citigroup, Banamex's indirect corporate parent, must account for the funds Mr. Schneider Sauter allegedly deposited at its foreign subsidiary. (D.I. 1 at ¶¶ 17-19)

## III. STANDARD OF REVIEW

"If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d).

Rule 41(d) endows federal courts with "broad discretion" to order stays and the payment of costs to deter "forum shopping and vexatious litigation." *Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (C.D. Cal. 1996); *see also Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000) (stating that 41(d) is "intended to prevent attempts to

---

the merits of the controversy had been raised before the court. *Estate of Sauter*, 2015 WL 3429112, at *4 (internal citations omitted).

5

gain any tactical advantage by dismissing and re-filing the suit"). "[T]he court should simply assess whether the plaintiff's conduct satisfies the [rule's] requirements" and grant the motion if "the circumstances of the case warrant an award ... to prevent prejudice to the defendant." See Esquivel, 913 F. Supp. at 1388. Generally, however, costs have been imposed only in those cases where the plaintiff has brought an identical, or nearly identical, claim and requested identical, or nearly identical, relief. Young v. Dole, Civ. No. 90-2667(TCP), 1991 WL 158977, at *3 (E.D.N.Y. July 11, 1991). To determine the scope of each of two successive claims and thus whether the second claim duplicates the first, the court must consider "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second [claim] were present in the first." NLRB v. United Technologies Corp., 706 F.2d 1254 (2d Cir. 1983). In essence, it must inquire whether the present claim might have been adjudicated based upon the facts involved in the first. Id.

## IV. DISCUSSION

Plaintiff avers that Rule 41(d) does not apply because: the complaint at bar pleads a different count and seeks different relief; Citigroup has not demonstrated bad faith on plaintiff's part; costs cannot be awarded for any tasks that would be useful to Citigroup in the instant action; and costs recoverable under Rule 41(d) do not include attorney fees. (D.I. 10 at 6-12)

### A. Costs Under Rule 41(d)

Plaintiff avers that the current complaint "differs substantially" from the voluntarily dismissed complaint because it "only makes sixteen factual allegations and pleads only

6

one count seeking an accounting." (*Id.* at 6) Therefore, plaintiff contends Citigroup is not entitled to costs under Rule 41(d). (*Id.*)

In comparing the New York complaint to that filed in Delaware, the court finds: (1) although the New York complaint asserted forty-four factual allegations, the current complaint does not add any new allegations, and the factual allegations made at bar are not materially different from the New York complaint; (2) although the New York complaint asserted five counts for relief and the current complaint pleads only one count, plaintiff seeks nearly identical relief. (*Id.*, ex. 1); (D.I. 1) In this regard, the New York complaint sought damages, but also requested that "the court order Citigroup and the other [d]efendants to turn over information pertaining to all accounts of Hans Jorg Schneider Sauter immediately." (*Id.*, ex. 10 at 24-25) Plaintiff currently asks the court to "order an accounting capable of permitting Counsel Garza to ascertain all transfers of funds into and out of the bank accounts formerly belonging to the decedent." (D.I. 1 at ¶ 19) The court finds that, under the standard of Rule 41(d), plaintiff has "commence[d] an action based upon or including the same claim[s] as brought in a previously dismissed action against the same defendant." Fed. R. Civ. P. 41(d).

Plaintiff also avers that, by filing this second suit, he is not acting in bad faith or "trying to game the system."[6] (D.I. 10 at 8-11) Contrary to plaintiff's assertions, "nothing in the language of Rule 41(d) ... suggests that a defendant must show 'bad faith' before a district court can order payment of costs incurred in a voluntarily dismissed previous

---

[6] Plaintiff contends that this simply "is an instance when a Mexican Estate inadvertently retained an attorney who was not experienced in federal court litigation and the filing of this complaint is the Estate's new counsel acting in good faith to rectify the errors of former counsel." (D.I. 10 at 11-12)

7

action." *Esquivel,* 913 F. Supp. at 1388. Instead, the court should simply assess whether a plaintiff's conduct satisfies the requirements of Rule 41(d), and whether the circumstances of the case warrant an award of costs to prevent prejudice to the defendant. *Id.* Here, assuming plaintiff's new counsel acted promptly and in good faith to rectify the errors of former counsel who was not experienced in federal court litigation, it is clear that Citigroup has incurred needless expenditures as a result. Therefore, an award under Rule 41(d) is appropriate.

Plaintiff contends that the burden is on a defendant seeking an award of costs under Rule 41(d) to demonstrate that money spent on tasks in the first lawsuit will not be necessary to defend against the second suit.[7] (D.I. 10 at 8-9) To recover costs, a defendant must show it suffered prejudice in the form of "needless expenditures." *See Esquivel,* 913 F. Supp. at 1388. This is especially true early in the litigation. *See Atkinson v. Forest Research Institute, Inc.,* 2015 WL 790220, at *6 (D. N.J. Feb. 25, 2015) (declining to award costs under 41(d) where action "ha[d] not progressed far beyond the initial pleadings, discovery [had] been minimal, [and] any materials that ha[d] been provided [would] likely be relevant in subsequent litigation"). Citigroup alleges that it was required to produce a detailed and comprehensive motion to dismiss in the New York litigation, only to see plaintiff refile the same claims in another court. (D.I. 8 at 4)

---

[7] The court declines to address plaintiff's argument that any "unnecessary expense" suffered by Citigroup is due to the "alleged incompetence of the Estate's former counsel," as such a finding is not necessary to support an award of costs under Rule 41(d). (D.I. 10 at 9)

8

The court concludes that Citigroup has established that it incurred "needless expenditures" and cannot rely entirely on the work performed in the New York litigation to defend against the suit at bar. The work done by Citigroup in drafting its motion papers in the voluntarily dismissed New York litigation involved researching, analyzing, and preparing to defend against plaintiff's claims under the Alien Tort Statute, fraudulent conversion, the Expedited Funds Availability Act, and RICO. *Estate of Sauter*, 2015 WL 3429112, at *1. These claims, as well as numerous factual allegations previously asserted by plaintiff, have all been dropped from the present suit and, therefore, such work has little value in this action.

## B. Attorney Fees Under 41(d)

The court must also address the question of whether attorney fees can be included in an award of costs under Rule 41(d), as Citigroup has sought attorney fees in its request. In this regard, Citigroup argues that the underlying purpose and the absence of any qualifier from the language of Rule 41(d) indicate that costs recoverable under Rule 41(d) include attorney fees.[8] (D.I. 8 at 10) Under the plain language of Rule 41(d), that argument fails.

The Supreme Court has recognized the "American Rule" that, absent express statutory authority, bad faith,[9] or willful disobedience of a court order, each party should bear the cost of its own attorney fees. *Alyeska Pipeline Service Co. v. Wilderness*

---

[8] Citigroup cites almost entirely to out-of-district cases to support its argument that attorney fees are included, but such cases are not binding precedent. (D.I. 8 at 10)
[9] Although a federal court can impose attorney fees under the so-called "bad faith doctrine," see *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991), and *Landon v. Hunt*, 938 F.2d 450 (3d Cir. 1991), this court did not make a finding of bad faith on the part of plaintiff, as such a finding is not necessary to support an award of costs under Rule 41(d).

9

*Society,* 421 U.S. 240, 259-60 (1975). Congress has not extended "roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *Id.* at 260. Therefore, federal courts cannot, absent specific statutory authority or one of the other two enumerated exceptions in *Alyeska,* disturb the "uniform system of cost-bearing created by Congress." *Zambrano v. City of Tustin,* 885 F.2d 1473, 1481 (9th Cir. 1989).

The court finds itself confronting an issue of first impression in this circuit, and the courts that have addressed this issue in different circuits and districts are split.[10] When confronted with a question of statutory construction, a court begins by analyzing the statutory language, "assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010).

The plain language of Rule 41(d), which does not refer to "attorney fees," implies that "costs" do not include "attorney fees." Fed. R. Civ. P. 41(d). The Supreme Court has noted that exclusion from a statute of any mention of attorney fees bears significantly on the determination of whether the award of such fees was intended. *See*

---

[10] *See Rogers,* 230 F.3d at 874 (finding attorney fees are unavailable under Rule 41(d)); *Anders v. FPA Corp.*, 164 F.R.D. 383, 388-91 (D. N.J. 1995) (rejecting reasoning of *Behrle* and refusing to award attorney fees under Rule 41(d)); *Simeone v. First Bank Nat'l Assoc.*, 125 F.R.D 150, 155 (D. Minn. 1989) (holding attorney fees are not "costs" under Rule 41(d)); *Esposito v. Piatrowski,* 223 F.3d 497, 501 (7th Cir. 2000) (finding that attorney fees are not a recoverable cost of litigation under Rule 41(d) unless the substantive statute which formed the basis of the original suit allows for the recovery of such fees as costs); *but see Evans v. Safeway Stores, Inc.,* 623 F.2d 121, 122 (8th Cir. 1980) (affirming an award of attorney fees under Rule 41(d)); *Esquival,* 913 F. Supp. at 1391 (awarding attorney fees under Rule 41(d)); *Behrle v. Olshansky,* 139 F.R.D. 370 (W.D. Ark. 1991) (awarding same).

10

*Marek v. Chesny*, 473 U.S. 1, 8-9 (1985).[11] Courts that have found Rule 41(d) to exclude attorney fees have followed this line of reasoning. "Where Congress has intended to provide for an award of attorney fees, it has usually stated as much and not left the courts guessing. The law generally recognizes a difference between the terms 'costs' and 'attorney fees' ... we must assume that Congress was aware of the distinction and was careful with its words when it approved Rule 41(d)." *Rogers*, 230 F.3d at 874. The above proposition is supported when looking at Rule 41(d) in context with other provisions of the Federal Rules that expressly provide for the award of attorney fees. *See, e.g.*, Fed. R. Civ. P. 4(d)(2)(B), 16(f), 30(g), 37(c)-(f), 54(d), 58(e); *see also Simeone*, 125 F.R.D. at 155.

Rule 41(d) does not expressly provide for the award of attorney fees. Under the plain language of the Rule, Citigroup should receive only costs and not attorney fees.[12]

### C. Stay on the Proceedings

The court has discretion to order a stay of the instant action pending plaintiff's payment of the costs imposed under Rule 41(d). Fed. R. Civ. P. 41(d). In this case, plaintiff has not persuaded the court that it would be unable to pay an award of costs, nor has plaintiff asserted that it would be harmed in any way by a stay of the proceedings. The court, therefore, finds a stay appropriate.

---

[11] Additionally, in light of the long standing "American Rule," the Court has historically expressed hesitance to depart from this rule absent explicit Congressional authority. *See Key Tronic Corp. v. United States*, 511 U.S. 809, 815 (1994); *Runyon v. McCrary*, 427 U.S. 160, 185 (1976); *Alyeska*, 421 U.S. at 247.

[12] In reaching this conclusion, the court has considered and rejected decisions that conclude that Rule 41(d) costs may include attorney fees. *See Esquivel*, 913 F. Supp. at 1388-92. The plain language of Rule 41(d) controls here. *See Rogers*, 230 F.3d at 874.

## V. CONCLUSION

For the foregoing reasons, Citigroup's motion for costs and a stay pursuant to Federal Rule of Civil Procedure 41(d) will be granted. (D.I. 7) An appropriate order shall issue.