## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MARIO ALBERTO LOPEZ GARZA,  )
THE EXECUTOR OF THE ESTATE OF )
HANS JORG SCHNEIDER SAUTER,  )
                             )
        Plaintiff,           )
                             )
    v.                       )        Civ. No. 15-537-SLR
                             )
CITIGROUP INC.,              )
                             )
        Defendant.           )
                             )

## MEMORANDUM

At Wilmington this $\partial^{q+n}$ day of June, 2016, having reviewed Citigroup Inc.'s

motion for judgment on the pleadings (D.I. 40), and the papers filed in connection

therewith; the court issues its decision based on the following reasoning:

1. **Background.**[1] On June 25, 2015, plaintiff Mario Alberto Lopez Garza

("Garza") initiated this instant lawsuit, as executor of the Estate of Hans Jorg Schneider

Sauter (the "Estate"), against Citigroup Inc. ("Citigroup") seeking an accounting to

determine whether Citigroup has information with respect to funds that may belong to

the Estate. (D.I. 1) The court has jurisdiction over this matter pursuant to 28 U.S.C. §

1332.

---

[1] The court presents only the background needed for the dispute at bar. A fuller
recitation of the background of the present litigation is presented in the memorandum
opinion on Citigroup's motion for costs and a stay pursuant to Federal Rule of Civil
Procedure 41(d). (D.I. 16)

2.  Garza resides in Jalisco, Mexico and serves as the executor of the Estate of Hans Jorg Schneider Sauter, a Mexican national who died in Mexico in 2008.  (D.I. 1 at ¶¶ 2-3)  Citigroup is a global bank incorporated in the State of Delaware, with its principal place of business in New York, New York.  (*Id.* at ¶ 4)  Banco Nacional de Mexico, S.A. integrante del Grupo Financiero Banamex ("Banamex") is a wholly-owned, indirect subsidiary of Citigroup.  (D.I. 11 at ¶ 5)

3.  After the death of Mr. Schneider Sauter, the Estate initiated probate proceedings in Mexico to collect and account for decedent's assets deposited in Banamex.  (D.I. 1 at ¶ 13)  The Mexican probate proceedings were halted when Banamex filed new litigation under the "amparo" process, which is a process designed to resolve the presence or absence of constitutional violations.[2]  (D.I. 49 at 5)  After the Mexican probate proceedings were halted, the Estate brought suit in the United States District Court for the Southern District of New York against Citigroup, Banamex, and Banamex USA ("New York litigation").  (*Id.*)  The Estate voluntarily dismissed the New York litigation without prejudice after the court denied its motion seeking leave to file a proposed second amended complaint.[3]  *Estate of Sauter v. Citigroup Inc.*, Civ. No. 14-05812 LGS, 2015 WL 3429112, at *3 (S.D.N.Y. May 27, 2015).  The Estate subsequently filed the instant complaint, claiming that Citigroup, Banamex's indirect

---

[2] Specifically, Banamex initiated the amparo proceedings to determine whether the Probate Judge had the authority to order Banamex to turn over either the Estate's funds it allegedly possessed or documents to defeat the Estate's claim to the funds.  (D.I. 1 at ¶¶ 13-14)

[3] On the basis that amendment would be futile.  (D.I. 42, ex C at 7:2-19)  The court asked if the Estate would be willing to dismiss the action with prejudice as it found the opposing parties' motion to dismiss "meritorious".  (*Id.* at 10:13-14)

2

corporate parent, must account for the funds Mr. Schneider Sauter allegedly deposited at its foreign subsidiary.  (D.I. 1 at ¶¶ 17-19)

4. **Standard.**  The court reviews a Rule 12(c) motion for judgment on the pleadings based on an allegation that the plaintiff has failed to state a claim "under the same standards that apply to a Rule 12(b)(6) motion." *Ferrell v. Cmty. Mgmt. Servs., LLC*, 2011 WL 1750452, at *1 (D. Del. May 6, 2011) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)).  That is, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted).  A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*  Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

3

5. **Analysis.** Citigroup's motion for judgment on the pleadings is premised on its argument that Garza fails to state a claim for the relief of an accounting when it has alleged no substantive claim entitling the Estate to that remedy. (D.I. 41 at 1-2) According to Citigroup, Garza has also failed to allege any relationship between the Estate and Citigroup that supports any duty by Citigroup to provide an accounting. (*Id.* at 2) Under well-accepted Delaware law, "[a]n accounting is an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due to either as a result." *Albert v. Alex. Brown Mgmt. Servs., Inc.*, Civ. No. 762-N, 2004 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005). In other words, an accounting "reflects a request for a particular type of remedy, rather than an equitable claim in and of itself." *Stevanov v. O'Connor*, Civ. No. 3820-VCP, 2009 WL 1059640, at *15 (Del. Ch. Apr. 21, 2009); *see also Addy v. Piedmonte*, Civ. No. 3571-VCP, 2009 WL 707641, at *23 (Del. Ch. Mar. 18, 2009) (explaining that an accounting is "dependent on the viability and outcome of the underlying causes of action"); *Rhodes v. Silkroad Equity, LLC*, Civ. No. 2133-VCN, 2007 WL 2058736, at *11 (Del. Ch. July 11, 2007) ("An accounting is not so much a cause of action as it is a form of relief. Here, the demand for accounting is inherently dependent on the Court's decision on the fiduciary duty claims.").

6. Garza asserts that "the law makes clear that an accounting is an appropriate cause of action to plead, and the appropriate remedy to seek, when 'the accounts are all on one side, but there are circumstances of great complication, or difficulties in the way of adequate relief at law.'" (D.I. 49 at 7-8) In *Kirschner v. West Company*, 300 F.2d 133 (3d Cir. 1962), the Third Circuit explained that, "[a] prayer for an accounting

4

will not, in itself, render a complaint cognizable in equity . . . . [t]here must be some equitable ground for relief in addition to the mere demand for an account." *Id.* at 135-36 (citations omitted). The Third Circuit concluded that the legal remedies were adequate because there was a contractual relationship between the parties. *Id.* at 136 The court in *Barkauskie v. Indian School District,* 951 F. Supp. 519 (D. Del. 2011), likewise characterized an accounting as "an equitable remedy which arises from the defendant's possession of money which he is obliged to surrender, due to some particular relationship between himself and the plaintiff." *Id.* at 543; *see Am. Air Filter Co. v. McNichol,* 527 F.2d 1297, 1300 (3d Cir. 1975). For instance, "[a] fiduciary relationship is a relationship in which one person reposes special trust in another, or . . . which a special duty exists on the part of one person to protect the interests of another." *Barkauskie*, 951 F. Supp. at 543-44. Contrary to Garza's interpretation of the case as an example of a Delaware court allowing an accounting to be a stand-alone claim, defendant's claim for an accounting arose out of its fiduciary relationship with plaintiff and plaintiff's alleged breach of that fiduciary relationship. *See id.* In the case at bar, Garza's failure to plead any underlying substantive cause of action or fiduciary relationship renders its claim for an accounting legally invalid on its face under Delaware law.

7. Garza suggests that New York, rather than Delaware, law regarding accounting should apply in the instant case because it believes Citigroup's conduct in New York is at issue.[4]  (D.I. 49 at 7 n.2) However, applying New York law does not cure

---

[4] Garza similarly suggests that Mexican law may be more applicable than Delaware law. (D.I. 49 at 7 n.2.) However, because Garza fails to cite any Mexican law that would

Garza's complaint because, under New York law, a fiduciary relationship must be
alleged to sustain a freestanding claim of an accounting. *See Haughton v. Cognisight,
LLC*, 953 F. Supp. 2d 478, 491 (W.D.N.Y. 2013) ("to make out such a claim [for
accounting], plaintiff must allege (1) a fiduciary relationship with defendants (2) involving
the entrustment of money or property, (3) that no other remedy exists, and (4) that
plaintiff demanded and was refused an accounting") (citing *In re Mary XX*, 822 N.Y.S.2d
659 (App. Div. 2006)).

8. In the complaint, Garza alleges that Citigroup has records and information in
its possession that could establish whether Banamex holds the Estate's funds, but
alleges no duty that would require Citigroup to provide these records and information to
the Estate.[5] (D.I. 1 at ¶ 15) Similarly, Garza alleges that Citigroup receives earnings on
the deposits made through Banamex and that Citigroup's board of directors offers
guidance in the activities of the Mexico operations. (*Id.* at ¶ 9) However, Garza does
not allege that Citigroup possesses the Estate's funds or that Citigroup controlled the
activities of the Mexico operations. (*Id.*) In the briefing, Garza never specifically alleges
any type of relationship, let alone a fiduciary relationship, between Citigroup and the
Estate. (D.I. 49) In Garza's reply brief, he intimates (rather than argues) that the

---

allow the Estate to bring a cause of action for an accounting against Citigroup in the
United States, the court declines to address this suggestion.
[5] The complaint states that Mexican law requires banks to turn over funds immediately
to an estate upon an accountholder's death, and alleges that Citigroup possesses
records and information regarding the Estate's funds with Banamex. (D.I. 1 at ¶¶ 10,
15) Garza asserts that these allegations sufficiently allege Citigroup's duty to turn over
the records and information regarding the Estate's funds with Banamex. (D.I. 57 at
19:11-20) The court finds no logical connection between these two allegations, as
Garza fails to allege how a Mexican law requiring a bank to turn over a deceased
accountholder's funds compels a bank's indirect corporate parent to turn over records
and information regarding those funds in the United States.

relationship between the Estate and Banamex should extend to Citigroup because

Citigroup has oversight and control over the compliance and risk management

procedures of its global operations,[6] which include Banamex. (*Id.* at 6) At oral

argument,[7] Garza suggested that, because Citigroup is required to implement a

comprehensive global anti-money laundering provision, it has an obligation to ensure

that its banking operations in Mexico are not being used for money laundering. (D.I. 57

at 24:8-25:9) Garza goes on to assert that, because the funds the Estate seeks were

the subject of a money laundering investigation, Citigroup (not Banamex) is responsible

for the duties and recordkeeping regarding the Estate's funds. (*Id.* 25:4-10)

9. This attenuated chain of reasoning is insufficient to show a fiduciary

relationship between a global holding company and one of its subsidiary bank's

accountholders. None of the sources of authority[8] cited by Garza support the notion

---

[6] Stating that Mexican and U.S. federal regulations and regulatory guidelines require Citigroup to implement and oversee comprehensive global risk management and compliance procedure. (D.I. 49 at 3-6) Moreover, Citigroup's Mexican operations "were run by senior executives who served in dual capacities in the Mexican banking operations as well as officers in Citi[group]'s global headquarters . . . in New York." (*Id.* at 4)

[7] Upon questioning by the court.

[8] Specifically, Garza cites Citigroup's memorandum regarding the impact of Section 619 of the Dodd-Frank Wall Street Reform and Consumer Protection Act and a set of interagency regulatory guidelines put forth by various federal regulatory agencies, which only require that Citigroup implement internal controls and risk management procedures in its subsidiaries. (D.I. 49, ex C-D) Additionally, Garza generally cites to Chapter XIV of the Financial Services of North American Free Trade Agreement, Articles 48-51 and 61 of Mexico's Law of Credit Institutions, and the Expedited Funds Availability Act, 12 U.S.C., Sections 4001-4010 as sources of law requiring Citigroup to maintain records and information regarding money laundering activity in its subsidiary banks. (D.I. 1 at ¶ 15) To the extent possible, the court has reviewed these sources of authority and has found no language or provisions that would specifically support either a relationship between Citigroup and the Estate or Citigroup's liability for Banamex's actions in the instant case.

7

that, because Citigroup is required to implement and oversee its subsidiaries

compliance procedures, Citigroup's corporate structure is altered in such a way that

would allow an individual Banamex accountholder to reach Citigroup, absent any

corporate veil piercing theory.[9]

10.  A parent company is not liable for the actions of a subsidiary solely because

of the parent-subsidiary relationship. *See United States v. Bestfoods*, 524 U.S. 51, 61

(1998). A finding of liability requires piercing the corporate veil.  *Id.* Prior case law

establishes two distinct tests for determining when piercing the corporate veil is

appropriate: (1) the alter ego test;[10] or (2) the agency test.  S*ee, e.g., Pearson*, 247 F.3d

at 484–86; *C.R. Bard Inc.*, 997 F. Supp. 556, 559–60 (D. Del. 1998); *Mobil Oil Corp. v.*

*Linear Films, Inc.*, 718 F. Supp. 260, 265–72 (D. Del. 1989). In order for a parent

corporation to be liable under the agency test, there must be a "close connection

between the relationship of the corporations and the cause of action," focusing on "the

arrangement between the parent and the subsidiary, the authority given in that

---

[9] As Garza's claim for an accounting fails to satisfy the minimum requirements of an accounting claim under New York law, it is unnecessary for the court to conduct a choice-of-law analysis and look beyond Delaware law. *See Pig Imp. Co. v. Middle States Holding Co.*, 943 F. Supp. 392, 396 (D. Del. 1996) (explaining that choice-of-law analysis is not required when laws of affected jurisdiction do not conflict).
[10] The Third Circuit alter ego test is "an inquiry into whether the debtor corporation is little more than a legal fiction" and "courts have refused to pierce the veil even when subsidiary corporations . . . accept administrative support from the parent, and have a significant economic relationship with the parent." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) (citations omitted). In order to prevail on an alter ego theory of liability, "plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such." *Id.* (citations omitted). The court finds the alter ego test to be inapplicable, as Banamex is not "merely a façade for the operations" of Citigroup, but a legitimate, indirect subsidiary of Citigroup. *See Id.*

arrangement, and the relevance of that arrangement to the plaintiff's claim." *Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F. Supp. 2d 426 (D. Del. 2005) (quoting *C.R. Bard Inc. v. Guidant Corp.*, 977 F. Supp. 556, 560 (D. Del. 1998)).

11. Garza did not allege a corporate veil piercing theory in its briefing or at oral argument; rather, it alleges that Citigroup has implemented and generally oversees the compliance and risk management policies in its subsidiaries. (D.I. 1 at ¶ 15) Garza does not cite any documents or regulations demonstrating that this general supervision would provide Citigroup with direct control over the deposits of Banamex's accountholders. *See e.g. C.R. Bard, Inc.*, 977 F. Supp. at 561 (finding that a subsidiary company was not an agent for a holding company because the subsidiary was responsible for making its own day-to-day decisions).

12. In its briefing and at oral argument, Garza points to *Oklahoma Firefighters Pension & Retirement Systems v. Citigroup Inc.*, Civ. No. 9587-ML, 2015 WL 1884453 (Del. Ch. April 24, 2015), to support compelling Citigroup to produce records relating to Banamex. (D.I. 49 at 3; D.I. 57 at 22:11-19) However, *Oklahoma Firefighters* and the instant action are not analogous, as *Oklahoma Firefighters* is a derivate suit directed against Citigroup's board of directors for breach of fiduciary duty in connection with events at Banamex and another Citigroup subsidiary; i.e., a legally recognized fiduciary duty existed. *See* 2015 WL 1884453, at *10-11. Furthermore, the Chancery Court's ruling compelling Citigroup to produce records relating to Banamex was related to the shareholders' statutory demand to investigate possible breaches of fiduciary duty by

9

Citigroup's board in connection with Banamex.[11] *Id.* at *1. The evident fiduciary relationship between the opposing parties, the nature of the legal proceeding, and the significantly lower burden of proof in the *Oklahoma Firefighters* case makes it inapposite to the present action. Therefore, Garza's incorporation of and reliance on the reasoning of the Chancery Court in *Oklahoma Firefighters* is unpersuasive.[12]

13. Should the court conclude (as it has) that an accounting cannot be a freestanding claim under Delaware law, Garza requests leave to amend because he "is able to plead the elements cited as necessary by Citigroup (special relationship, debt owed)." (D.I. 49 at 9) Leave to amend a complaint shall be freely given when justice requires. *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000). Amendment is not automatic, but should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility of amendment occurs when the complaint, as amended, does not state

---

[11] A "Section 220" demand is the right of a "stockholder . . . to inspect for any proper purpose . . . [t]he corporation's . . . books and records," and requires a stockholder only to establish a credible basis, the "lowest burden of proof," that the demand "is based on more than mere suspicion and conjecture." *Okla. Firefighters*, 2015 WL 1884453, at *5 (citation omitted); 8 Del. C. §220(b)(1). The Chancery Court encourages stockholders to pursue Section 220 demands in order to allow stockholders to make "intelligent decision[s] about whether or not to sue" and prevent them from filing premature complaints that cannot survive a motion to dismiss. *Okla. Firefighters*, 2015 WL 1884453, at *5 (citation omitted).

[12] In *Oklahoma Firefighters*, the Chancery Court itself stated that "the record would not likely support fiduciary duty claims capable of surviving a motion to dismiss," and that it "does not ignore the corporate separateness of Citigroup and Banamex." *Id.* at *5-6.

a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

14. As explained above, Garza has failed to adequately allege a special relationship between the Estate and Citigroup. The court, having reviewed the laws and regulations cited by Garza as the sources of connection between Citigroup and the Estate, finds no legal or factual basis from which Garza can aver a special relationship between the Estate and Citigroup. Because Garza cannot establish the requisite relationship between the Estate and Citigroup that would support an imposition on Citigroup of a duty to account, it would be futile to allow Garza to amend his complaint. *See Am. Air Filter Co.*, 527 F.2d at 1300-01; *Barkauskie*, 951 F. Supp. at 543.

15. **Conclusion.** For the foregoing reasons, Citigroup's motion for judgment on the pleadings (D.I. 40) is granted.[13] Citigroup's motion to stay discovery pending resolution of Citigroup's rule 12(c) motion for judgment on the pleadings (D.I. 43) is denied as moot. An appropriate order shall issue.

United States District Judge

---

[13] As such, the court declines to address Citigroup's alternative argument for a stay pending proceedings in Mexico.